# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| JOHNNIE LEE MCKNIGHT, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. CV407-014 |
| | ) | [underlying CR403-231] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Johnnie Lee McKnight moves this Court, over the government's opposition, for 28 U.S.C. § 2255 relief. (Docs. 1 & 7.)[1] For the following reasons his motion should be **DENIED**.

## I. BACKGROUND

McKnight was convicted of possessing counterfeit currency with intent to defraud and possessing a firearm and ammunition while a convicted felon. Having unsuccessfully appealed, United States v. McKnight, 154 F. App'x 134 (11th Cir. 2005), he now asserts that:

> (1) his conviction was obtained by the use of evidence gained pursuant to an unconstitutional search and seizure;

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV407-014. "Cr. Doc." refers to documents filed under movant's criminal case, CR403-231.

(2)   the order denying his motion to suppress was issued in violation of the United States Magistrates Act and the Due Process Clause and Article III of the United States Constitution;

(3)   his conviction was obtained by the use of evidence gained as a result of tainted state court proceedings;

(4)   his conviction should be overturned on the grounds of newly discovered evidence;

(5)   the prosecution failed to disclose favorable evidence;

(6)   his two confessions were obtained pursuant to an unconstitutional violation of his Fourth Amendment right to receive a probable cause determination within 48 hours of arrest;

(7)   the confessions were obtained pursuant to a violation of Rule 5 of the Federal Rules of Criminal Procedure; and

(8)   his counsel was ineffective.

(Doc. 1 at 9-12.)

## II.   ANALYSIS

### A. Governing Standards

McKnight admits that he failed to raise any of his grounds for relief on direct appeal.  (Doc. 1 at 5-11.)  "Under the procedural default rule, a [movant] generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else [he] is barred from

presenting the claim in a § 2255 proceeding." <u>Lynn v. United States</u>, 365

F.3d 1225, 1234 (11th Cir. 2004). Claims of ineffective assistance of

counsel, however, are not subject to the procedural default rule. Because

of the unique aspect of such claims, "an ineffective assistance of counsel

claim may be brought in a collateral proceeding under § 2255, whether or

not the movant could have raised the claim on direct appeal." <u>Massaro v.

United States</u>, 538 U.S. 500, 504 (2003). Accordingly, ground 8, alleging

ineffective assistance of counsel, must be reviewed on the merits, but

grounds 1-7 are procedurally defaulted unless McKnight can establish cause

and prejudice excusing his default.[2] <u>Lynn</u>, 365 F.3d at 1234 (citing <u>Bousley

v. United States</u>, 523 U.S. 614, 622 (1998)).

---

[2] In addition to cause and prejudice, a procedural default may be excused on the grounds of actual innocence. <u>Lynn</u>, 365 F.3d at 1234. McKnight has consistently argued that he is innocent of the crimes for which he was convicted. (Cr. Doc. 74 126, 141-43; Cr. Doc. 75 at 6; Doc. 15 at 3.) The actual innocence standard is exceedingly narrow, however. "To meet this standard, a movant must show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)). Actual innocence refers to factual innocence, not mere legal insufficiency. <u>Bousley v. United States</u>, 523 U.S. 614, 623-24 (1998) (quotations and citations omitted). The Supreme Court has indicated that a movant must present "new reliable evidence" establishing that "it is more likely than not that no reasonable juror would have found [movant] guilty beyond a reasonable doubt." <u>House v. Bell</u>, 547 U.S. 518, 536-37 (2006) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). As discussed *infra*, though McKnight attempts to present "new" evidence, he fails to establish that "no reasonable jury would have found [him] guilty beyond a reasonable doubt." Consequently, he cannot excuse his procedural defaults on this ground.

McKnight alleges that he did not present grounds 1-7 to the Eleventh Circuit because his counsel was ineffective. (Doc. 1 at 5-12.) "[C]onstitutionally '[i]neffective assistance of counsel . . . is cause" for excusing procedural default. <u>McCleskey v. Zant</u>, 499 U.S. 467, 494 (1991) (citations omitted). Consequently, the Court must analyze all eight grounds for relief to determine whether counsel was ineffective.

In <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether a movant received ineffective assistance of counsel. First, movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." <u>Id.</u> Second, movant must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. <u>Id.</u>

Under the performance prong, courts evaluate the reasonableness of an attorney's performance from counsel's perspective at the time of the alleged error and in light of all the circumstances. <u>Id.</u> at 690. The movant carries a heavy burden, as "reviewing courts must indulge a strong

presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Id.</u> at 689.

Under the prejudice prong, McKnight must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986); <u>Strickland</u>, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694; <u>see also</u> <u>Lightbourne v. Dugger</u>, 829 F.2d 1012, 1022 (11th Cir. 1987); <u>Boykins v. Wainwright</u>, 737 F.2d 1539, 1542 (11th Cir. 1983).

The same <u>Strickland</u> test applies to claims of ineffective assistance of appellate counsel. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986); <u>Smith v. Murray</u>, 477 U.S. 527, 535-36 (1986). But the Sixth Amendment does not require appellate advocates to raise every nonfrivolous issue. <u>Jones v. Barnes</u>, 463 U.S. 745 (1983). Effective appellate counsel should "'winnow out' weaker arguments even though the weaker arguments may be meritorious." <u>Id.</u> at 751-52. Counsel thus has no duty to assert every

potentially colorable claim of error, even if his client urges him to do so, but instead should exercise his professional judgment and select only "the most promising issues for review." Id.

## B.    Search and Seizure

McKnight first contends that his conviction was obtained by the use of evidence gained pursuant to an unconstitutional search and seizure. (Doc. 1 at 5.)  Following an evidentiary hearing, this Court found that

> Corporal William Kile, a patrol officer for the Springfield Police Department, observed a red Acura Legend with a tinted license plate cover . . . [and] effected a stop of the vehicle. . . .  Corporal Kile asked . . . McKnight, for his license and proof of ownership. When [McKnight] was unable to produce proof of ownership, Corporal Kile also ran a check on the expired temporary tag, which resulted in no record being found. . . .  Corporal Kile then had dispatch check the vehicle identification number to determine the owner of the vehicle.
>
> While waiting on the result of the check on the VIN, Corporal Kile asked defendant for permission to search the vehicle. [McKnight] agreed. . . . [Corporal Kile] found a box of .45 caliber bullets under the seat of the car. [McKnight] told Corporal Kile that it was an old box, although the officer believed that it looked new. [McKnight] also told the officer that he was a convicted felon, and a criminal history check . . . confirmed this. Corporal Kile continued to search the vehicle, opening the trunk, and found a .380 caliber handgun on top of the spare tire. At that time, [McKnight] was placed under arrest.

(Cr. Doc. 15.)

McKnight contends that the stop was pretextual, he withdrew his consent to search the vehicle, and his trial and appellate counsel were ineffective for failing to raise these issues. (Doc. 1, Attach. at 3-12, 34-39.) At the suppression hearing, McKnight admitted that his Acura had a tinted cover over the license plate. (Cr. Doc. 21 at 4.) Under Georgia law, tinted license plate covers are illegal. See O.C.G.A. § 40-2-41 ("No license plate shall be covered with any material unless that material is colorless and transparent."). This rule applies even if the vehicle is registered in another state (here, the car was apparently registered in Florida or South Carolina). Nelson v. Georgia, 544 S.E.2d 189, 190 (Ga. Ct. App. 2001); Georgia v. Davis, 641 S.E.2d 205, 206 (Ga. Ct. App. 2007) ("Although certain portions of O.C.G.A. § 40-2-41 apply only to vehicles registered in Georgia, the [tag-tinting] portions of the statute apply to any vehicle whether registered in Georgia or out of state.").

Consequently, Kile had probable cause to stop McKnight's vehicle, and probable cause is enough to effectuate a stop regardless of Kile's subjective intentions. Whren v. United States, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth

Amendment analysis."). Accordingly, McKnight's pretext argument is plainly without merit, and counsel cannot be said to have been ineffective for failing to pursue it at trial or on appeal.

As for the search of McKnight's vehicle, defense counsel elicited testimony from him at the suppression hearing regarding his withdrawal of consent. (Cr. Doc. 39 at 35.) The Court, however, credited Kile's testimony that McKnight voluntarily agreed to the search and rejected McKnight's contradictory testimony that he withdrew consent shortly after granting it.[3] As trial counsel raised the claim, McKnight's contention that counsel was ineffective for failing to pursue it is plainly foreclosed.

---

[3] McKnight also contends that Kile had no right to ask for consent to search for guns, knives, or weapons because the encounter was no longer consensual and the items were not related in scope to a traffic violation. (Doc. 1, Attach. at 8.) His assertion is contradicted by the record. At the time of the stop, McKnight handed Kile his license and insurance card. (Cr. Doc. 39 at 6; Cr. Doc. 111 at 45.) After looking over the documents, Kile called police dispatch with the VIN number on the car to verify ownership, but before dispatch responded he asked McKnight for consent to search the car. (Cr. Doc. 39 at 7.) At the time Kile asked for consent to search the vehicle, the detention was still reasonable. The car had an expired temporary tag and McKnight told Kile that he had recently been released from prison, so it was reasonable for Kile to suspect that the vehicle may have been sold while McKnight was still incarcerated. (Cr. Doc. 111 at 59.)

Kile was entitled to verify ownership by running the VIN number. Furthermore, it is not critical to the analysis that McKnight consented to the search while the officer retained his driver's license. United States v. Purcell, 236 F.3d 1274, 1282 (11th Cir. 2001) (noting that even if a defendant does not feel free to leave because the officer has kept his driver's license, his consent to search may still be voluntary).

Counsel's decision not to file objections to the Court's report and recommendation ("R&R") recommending that the suppression motion be denied was sound trial strategy; there was simply no reason to belabor the issue. Moreover, appellate counsel was not required to pursue such a flimsy claim on appeal. Accordingly, McKnight's procedural default of this ground should not be excused.

## C.   Report and Recommendation

McKnight contends that the R&R recommending that his motion to suppress be denied violated the United States Magistrates Act and the Due Process Clause and Article III of the United States Constitution. (Doc. 1 at 6.) He argues that counsel was ineffective for failing to object to the R&R on these grounds and to raise them on appeal. (Doc. 1 at 6.) McKnight's contention, however, is directly contrary to law. In <u>United States v. Raddatz</u>, 447 U.S. 667 (1980), the Supreme Court explicitly held that a federal magistrate judge may conduct a suppression hearing and issue a report and recommendation consistent with § 636(b)(1) of the Magistrates Act, the Due Process Clause of the Fifth Amendment, and Article III of the

United States Constitution. Id. at 681-82, 84; United States v. Williamson, 339 F.3d 1295, 1305 n. 18 (11th Cir. 2003).

McKnight also contends that the district judge did not read a transcript of the hearing or listen to the live testimony, thus abdicating his constitutional responsibilities. (Doc. 1, Attach. at 12.) It is true that a district judge must "read the transcript of the hearing before a magistrate on a motion to suppress, before adopting the magistrate's recommendation." United States v. Elsoffer, 644 F.2d 357, 358 (5th Cir. 1981) (per curiam)[4]; Stokes v. Singletary, 952 F.2d 1567, 1576 (11th Cir. 1992). And, as McKnight points out, the formal transcription of the hearing was not available for the district judge to review before adopting the R&R. But McKnight's contention that the district judge failed in his constitutional duties (Doc. 1, Attach at 12) must be rejected for two reasons. First, this Court records all suppression hearings, and those recordings are immediately available for review by the district judge. (Indeed, the transcript of the motions hearing states that the "[p]roceedings [were]

---

[4] Elsoffer is binding Eleventh Circuit precedent. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981).

reported electronically.") Second, the lack of a formal transcript in the record does not establish that a draft of the transcript was not available for prompt review (for judges often request transcripts that are never officially filed).

The district judge stated that he performed a "careful <u>de novo</u> review of the record in [the] case." (Cr. Doc. 26.) Counsel had no basis for challenging this statement and thus was not ineffective for failing to object on this ground.

### D. Tainted Georgia Proceedings

McKnight contends that his "conviction was obtained by use of evidence gained as a result of the tainted proceedings of the State of Georgia." (Doc. 1 at 8.) Specifically, he argues that it was unreasonable for the arresting officer to stop him on suspicion of him violating O.C.G.A. §§ 40-2-8 and 40-2-41 because the application of those statutes to the citizen of a foreign state violates the Full Faith and Credit Clause of Constitution. (Doc. 1, Attach. at 14-18.) Even if the statute is illegal as applied to citizens of foreign states, however, the Supreme Court has noted that it has "not required suppression of the fruits of a search incident to an arrest made in

good-faith reliance on a substantive criminal statute that subsequently is declared unconstitutional." United States v. Leon, 468 U.S. 897, 911-12 (1984) (citing Michigan v. DeFillippo, 443 U.S. 31 (1979)). Counsel did not perform deficiently by failing to raise this plainly meritless argument.

McKnight next contends that his constitutional rights were violated because he was not afforded an opportunity to demonstrate his innocence of the underlying traffic violation in state municipal court. (Doc. 1, Attach. at 18-20.) As noted by respondent, it appears that McKnight is attempting to employ the "beyond a reasonable doubt" standard to the traffic stop, when all that is constitutionally required is probable cause to believe that a traffic violation has occurred. "[A] police officer may stop a vehicle '[w]hen there is . . . *probable cause* to believe the driver is violating any one of a multitude of applicable traffic and equipment regulations' relating to the operation of motor vehicles." United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990) (quoting Delaware v. Prouse, 440 U.S. 668 (1979)) (emphasis added); see DeFillippo, 443 U.S. at 36 ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is

arrested is irrelevant to the validity of the arrest."). Accordingly, McKnight has not overcome the presumption that counsel was effective, so these grounds remain procedurally defaulted.

### E.    Newly Discovered Evidence; *Brady* Violation

McKnight contends that his conviction should be overturned on the grounds of newly discovered evidence (in the form of a cassette tape and dispatch log from the Springfield Police Department) that, among other things, slightly contradicts the suppression hearing testimony of the arresting officer, Cpl. William Kile.  (Doc. 1, Attach. at 20.)  He recently filed an unsuccessful motion for new trial on substantially the same grounds.  (Cr. Docs. 126 & 139.)  Because the evidence *was* considered by the district judge and deemed irrelevant to the determination of McKnight's guilt,[5] he was not prejudiced by his counsel's failure to raise the issue.

---

[5] That evidence, says McKnight, shows that Kile's unit number was 307, not 508, as Kile reported at the suppression hearing.  (Doc. 1, Attach. at 20-21.)  With the proper unit number, McKnight believes he could have subpoenaed more information showing that Kile committed perjury.  (Id.) He does not indicate, however, what information he could have uncovered or how that derivative evidence would have changed the outcome of the trial.  The unit number itself could have been used as impeaching evidence, but impeaching evidence alone cannot supply the basis for a new trial (nor does it necessarily prove perjury, which requires a showing that the officer *intentionally* lied on the stand).  United States v. Schlei, 122 F.3d 944, 991 (11th Cir. 1997).

McKnight also asserts that the government failed to disclose that evidence prior to trial, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>United States v. Bagley</u>, 473 U.S. 667 (1985), and <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995). (Doc. 1, Attach. at 21.) He alleges that the evidence would have changed the outcome of his suppression proceeding, as he could have impeached Officer Kile and shown that the stop was pretextual.[6] (Doc. 1, Attach. at 24.) As discussed above, however, McKnight admitted that his Acura had a tinted cover over his license plate, and such a cover violates Georgia law. Thus, under <u>Whren</u>, the stop was legal and there was no need to exclude the resulting evidence. 517 U.S. at 813; <u>United States v. Jones</u>, 377 F.3d 1313, 1314 (11th Cir. 2004) (holding that it was error for a district court to consider an officer's subjective intentions in suppression proceedings when probable cause existed to justify a seizure). As the evidence would not have been excluded, the outcome of the suppression proceeding was not reasonably likely to have changed, and the evidence was therefore not material under the <u>Brady</u> line of cases. <u>Kyle</u>, 514 U.S. at 434-

---

[6] McKnight also contends that it would have shown that Officer Kile "deliberately committed perjury." (Doc. 1, Attach. at 24.) The Court presumes he is referring to the mistaken unit number Kile gave during the hearing. Perjury, however, requires proof that Kile purposefully gave inaccurate testimony. Based upon the transcript, there is simply no indication that he did--at best, it appears to be a simple memory error.

35; <u>Bagley</u>, 473 U.S. at 682. Since the evidence was not material, the government's failure to disclose it to McKnight does not require a reversal. <u>Bagley</u>, 473 U.S. at 684. Consequently, McKnight cannot show that his counsel's failure to pursue the matter prior to the suppression hearing prejudiced him.

It follows that counsel was not ineffective for failing to raise these issues at trial or on appeal. Thus, McKnight's procedural default of these grounds should not be excused.

## F.     Confessions

McKnight contends that his conviction was obtained by the use of two confessions obtained in violation of his right to a prompt probable cause determination. (Doc. 1 at 10(a).) The Fourth Amendment requires a prompt probable cause determination following a warrantless arrest, <u>County of Riverside v. McLaughlin</u>, 500 U.S. 44, 56 (1991); <u>Gerstein v. Pugh</u>, 420 U.S. 103, 119 (1975), and it should usually be made within 48 hours of the arrest. <u>Riverside</u>, 500 U.S. at 56. McKnight alleges that he was arrested at 11:00 p.m. on September 26, 2003, but a probable cause determination was not made until September 30, 2003. (Doc. 1, Attach. at

25.) He states that the first confession occurred at 3:00 a.m. on the morning of September 27, 2003, and the second occurred before the probable cause determination on September 30, 2003. (Id. at 24-25.)

The first confession was taken almost immediately after the incident, long before the 48 hour window had elapsed. (Doc. 1, Attach. at 24.) Consequently, it was not taken in violation of the rule. Regardless, he does not allege that the confessions were involuntary. A voluntary confession taken in violation of the Riverside/Gerstein rule does not warrant suppression. Lawhorn v. Allen, 519 F.3d 1272, 1292 (11th Cir. 2008); see Powell v. Nevada, 511 U.S. 79, 84-85 (1994) (declining to hold that suppression is an appropriate remedy for violation of the right to a prompt probable cause determination).[7] As the issue was meritless, counsel's performance was not deficient, so his procedural default of this ground should not be excused.[8]

---

[7] Indeed, if the U.S. Supreme Court were to find that suppression is an appropriate remedy, it would have to create a new constitutional rule, and such a rule could not be applied during collateral review. See Teague v. Lane, 489 U.S. 288, 310 (1989) (plurality).

[8] McKnight also argues that he was not promptly presented to a federal magistrate under Rule 5 of the Federal Rules of Criminal Procedure and the McNabb/Mallory rule. (Doc. 1 at 10(a).) As McKnight was in *state* custody on state charges before the federal indictment, there was simply no need to bring him before a *federal* magistrate. United States v. Romano, 482 F.2d 1183, 1190-91 (5th Cir. 1973);

## G. Ineffective Assistance of Counsel

Finally, McKnight contends that he was denied the effective assistance of counsel because trial counsel operated under a conflict of interest and both trial and appellate counsel performed deficiently. (Doc. 1, Attach. at 27-51.) As noted above, these claims are not subject to the procedural default rule and must be analyzed on the merits.

### 1. *Conflict of Interest*

McKnight first contends that his trial counsel, Harris Odell, Jr., was ineffective because of a conflict of interest. (Doc. 1 at 10(a).) "The Sixth Amendment right to effective assistance of counsel encompasses the right to counsel untainted by conflicts of interest." Lynd v. Terry, 470 F.3d 1308, 1318 (11th Cir. 2006) (citing Cuyler v. Sullivan, 446 U.S. 335 (1980)). "This right is violated when the defendant's attorney has an actual conflict of interest that adversely affects the lawyer's performance." Cuyler, 446 U.S. at 350. To prove ineffective assistance based upon a conflict of interest, movant must show: "(a) that his defense attorney had an actual conflict of

---

Barnett v. United States, 384 F.2d 848, 856 (5th Cir. 1967). Furthermore, any questioning by federal agents prior to the imposition of federal charges is permissible. Barnett, 384 F.2d at 857.

interest, and (b) that this conflict adversely affected the attorney's performance." Reynolds v. Chapman, 253 F.3d 1337, 1342 (11th Cir. 2001) (citing Cuyler, 466 U.S. at 348-49). In order to establish an actual conflict, McKnight "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative causes of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." Smith v. White, 815 F.2d 1401, 1404 (11th Cir. 1987). "A possible, speculative or merely hypothetical conflict does not suffice." Lightbourne v. Dugger, 829 F.2d 1012, 1023 (11th Cir. 1987) (citing Cuyler, 446 U.S. at 350). "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." Cuyler, 446 U.S. at 350.

McKnight argues that Odell's refusal to file several motions of questionable merit or to interview several largely irrelevant witnesses demonstrates his loyalty to the government rather than to his client. (Doc. 1, Attach. at 27-37.) Odell's decisions on trial strategy, however, even if strongly opposed by McKnight, simply do not support his contention that

Odell was "actively representing conflicting interests." This claim is utterly frivolous and should be denied.

### 2. *Ineffective Assistance*

McKnight contends that counsel was inadequate under <u>Strickland v. Washington</u>[9] for failing to: (1) subpoena phone records from the Effingham County Jail on the date of his arrest; (2) interview the Time Saver's store clerk, who saw him shortly before the arrest; (3) investigate or retrieve information from the Fairfax Police Department in Allendale, S.C., regarding a citation he had received a week earlier; (4) retrieve a "work order" regarding Kile's malfunctioning video camera; and (5) properly cross-examine Kile at the suppression hearing.[10] (Doc. 1, Attach. at 37-39.)

---

[9] McKnight also frames his contentions of ineffective assistance as violations of the standard for attorney effectiveness set out in <u>United States v. Cronic</u>, 466 U.S. 648 (1984). (Doc. 1, Attach. at 44-51.) <u>Cronic</u>, however, did not establish a new constitutional standard; it merely applied <u>Strickland v. Washington</u>.

[10] In addition to the grounds listed above, McKnight re-raises several contentions already discussed *supra*. Specifically, he contends that his counsel was ineffective for failing to: (1) file a motion to suppress his two confessions as taken in violation of his right to a prompt probable cause determination and Rule 5 of the Federal Rules of Criminal Procedure; (2) file objections to the suppression R&R; and (3) object to the district judge's adoption of the R&R as violative of Due Process, Article III, and the U.S. Magistrates Act. (Doc. 1, Attach. at 39-40.) As discussed above, counsel was not ineffective for failing to file these motions or objections.

Essentially, McKnight argues that his trial counsel should have spent more time and effort investigating the facts of the case in order to obtain impeachment evidence, which he could have used at the suppression hearing to "properly" impeach Kile. He argues that this evidence would have revealed a plethora of minor inconsistencies in Kile's testimony at the suppression hearing. (Id. at 38-39.) He does not indicate, however, how a detailed impeachment of Kile's testimony would have resulted in a different case outcome. (Id. at 39.) Indeed, much of his argument bears upon his pretext argument, which is plainly foreclosed by Whren v. United States, as discussed above.

A movant "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). That is, McKnight must allege something more than mere speculation and conjecture as to how Kile's "proper" impeachment would have impacted his case. Moreover, McKnight radically mischaracterizes Kile's testimony at the suppression hearing by suggesting that Kile

"subconsciously" admitted that he had performed the search without consent. (Doc. 1, Attach. at 41.) The Court is not prepared to find ineffective assistance based upon "subconscious" admissions in the record. Absent a showing that counsel performed deficiently or that McKnight was prejudiced by that allegedly deficient performance, his claims of ineffective assistance of counsel support no relief here.

## III. CONCLUSION

McKnight has failed to demonstrate that his counsel was ineffective. Accordingly, his § 2255 motion should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this ___27th___ day of January, 2009.

/s/ G. R. SMITH
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**